UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON BRIDINGER,

                Petitioner,                      Case Number 15-10416
                                                      Honorable David M. Lawson

v.

RANDY HAAS,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Leon Bridinger broke into his stepsister's house in Ionia County, Michigan, where she discovered him when he tried to slide into her bed. He was completely naked at the time. As a result of that conduct, Bridinger was convicted of third-degree home invasion and sentenced to prison as a fourth habitual offender. His appeals through the Michigan courts were unsuccessful, and, although presently he is on parole, he now seeks a writ of habeas corpus under 28 U.S.C. § 2254. Bridinger has raised a variety of issues, which replicate the claims of error raised in his state appellate court briefs. They are set out in detail below. The Court does not find merit in any of them, and therefore the petition will be denied.

I.

The petitioner's conviction arises from his unlawful entry into his stepsister's home in North Plains Township, Ionia County, Michigan during the early morning hours on August 20, 2010. According to the Michigan Court of Appeals's opinion on direct review,

> [o]nce inside his stepsister's home, defendant, who was naked, attempted to enter the bed in which his stepsister was sleeping. Defendant's stepsister recognized defendant on the night of the incident and found his wallet at her house. The stepsister testified at trial that defendant intended to climb into her bed, but "[n]ot to sleep. I guarantee it." The jury convicted defendant of third-degree home invasion,

predicated on his commission of the underlying misdemeanor offense of indecent exposure inside his stepsister's home.

*People v. Bridinger*, No. 303248, 2013 WL 5663224, *1 (Mich. Ct. App. Oct. 17, 2013) (unpublished).

At trial, the petitioner's stepsister, Marilyn Fedewa, testified that she lived alone in her house at the time of the incident. The petitioner lived about one quarter of a mile away at his mother's house. Fedewa kept her doors locked, but left a window open because she believed that no one could get inside. The petitioner did not have a key to Fedewa's home, but he was welcome to visit when he was sober. The petitioner's mother, Dorothy Silvernail, had a key to use for an emergency. Fedewa did not believe that the petitioner knew where that key was kept.

On Friday, August 20, 2010, at about 1:30 a.m., Fedewa was awakened from sleep by her puppy. She saw a naked, white-haired man getting ready to climb into her bed. She was scared and fled her house, wearing only a nightgown. She grabbed her puppy and her cell phone on the way out. She could not get her phone to work. She then realized that the petitioner was the naked man in her bedroom and went back inside the house. On the floor lay her window shutter and the petitioner's clothes. By then the petitioner was standing near her table, still naked as a jaybird. She screamed at him to leave, but he sat down and told her to calm down. But she continued to scream at him so that he would leave. Taking the hint, he began to gather his clothes; she threw the rest outside. When he left, she slammed her door shut and locked it. She also grabbed a baseball bat and a knife and sat in a chair in her bedroom. She could not sleep. She did not call 911 because her phone still would not work.

Fedewa saw that her riding lawn mower had been moved from her shed to near the house and a corner of a window screen had been cut, which led her to believe that the petitioner entered her

house through a window.  On her picnic table in the yard, she also discovered other less-than-subtle signs of his presence: two unopened Busch Light beer cans and the petitioner's wallet.  She did not know if the petitioner was drunk that night because she did not go near him.

Fedewa told her neighbor what had happened, but she did not initially contact the police because the petitioner was her stepbrother and she did not want to upset his mother, Dorothy Silvernail.  Nonetheless, she went to Silvernail's house later that afternoon and told her what had happened.  Silvernail was upset and then angry.  Fedewa gave her the petitioner's wallet to prove that she was telling the truth.

Fedewa continued to have trouble sleeping.  The following Monday, after talking to a neighbor and a detective that she knew, she reported the incident to the police.  On Tuesday, the police photographed her home and took the beer cans.

The police did not find any fingerprints on the beer cans.  They found four fingerprints on the window, but were not able to identify them.  The police subsequently arrested the petitioner.

At trial, Dorothy Silvernail testified that the petitioner and his brother went out on Thursday, August 19, 2010 to celebrate the petitioner's birthday.  She said that the petitioner returned home around 12:30 or 12:45 a.m. and was very drunk.  It was the worst she had ever seen him.  She yelled at him to go to bed.  Silvernail recalled Fedewa coming over the next morning with a wallet, but did not remember saying much to her.  When the police came to Silvernail's house to investigate, she did not say that the petitioner had come home drunk that night, but she did admit that Fedewa brought over a wallet and put it on her computer desk.  Silvernail denied telling the police that the petitioner drank Busch Light beer, but the trooper testified otherwise.

The petitioner's brother, Richard Bridinger, confirmed that he picked up the petitioner that Thursday night and took him to a few bars to celebrate his birthday. They drank whiskey and cola before going to a friend's house to look for Richard's lost dog. At about midnight, Silvernail called Richard on his cellphone. After the call, Richard returned to his own house with the petitioner, where they drank Busch Light beer. He said the petitioner walked home at about 12:20 or 12:30 a.m., although he told the police earlier that the petitioner left his house at 1:00 a.m.

While the petitioner was in jail awaiting trial, he spoke regularly with his mother. The police recorded several of those calls — 14 of them — and some were received in evidence at trial. In one call, the petitioner threatened to provide evidence against Fedewa's sons and their involvement in illegal drugs, in exchange for a deal with the prosecutor. In another, he expressed confidence in his trial outcome, because he thought all the evidence against him was "circumstantial." But he also told Silvernail to mold her testimony about the time he returned home on the night of the crime to support an alibi, which he anticipated his brother Richard would do. And in another, the petitioner told his mother that he had sent her a letter for her and Richard to read and then destroy. He assured Silvernail that he knew what he was doing.

The petitioner did not testify on his own behalf. At the close of trial, the jury found the petitioner guilty of third-degree home invasion. The trial court subsequently sentenced him as a fourth habitual offender to four to 20 years in prison.

The petitioner filed a direct appeal, raising the same claims presented here, which are set forth below. He was represented by counsel in his first-level appeal, although he also filed an additional brief on his own that supplemented the claims presented by his attorney. The Michigan Court of Appeals affirmed his conviction and sentence, *Bridinger*, 2013 WL 303248 at *1-9, and

the state supreme court denied leave to appeal, *People v. Bridinger*, 495 Mich. 980, 843 N.W.2d 769, *reconsideration denied*, 496 Mich. 869, 849 N.W.2d 350 (2014).

The petitioner then filed his federal habeas petition. He raises the following claims:

I.      The evidence was insufficient to prove indecent exposure, and thus insufficient to prove the charged offense, third-degree home invasion predicated on the commission of indecent exposure.

II.      The trial court plainly erred by instructing on only two of the three elements of indecent exposure, where indecent exposure was itself an element of the charged offense. In the alternative, trial counsel was ineffective for not objecting to the defective instruction.

III.      The district court failed its judicial oversight duties, and thus violated Petitioner's constitutional right to due process, and equal protection under the law, as stated in, both, Michigan Constitution 1963, Article I, §§ 2, 13, 17, & 20; and, Article VI, § 13; and United States Constitution, Amendments V, VI, VII, and XIV, § 1 by its failure to oversee the prosecution's procedures to initially charge Petitioner (in District Court, Case # 101449-FY), with a second count, in the original information which would subsequently include the indecent exposure statute, Mich. Comp. Law 750.335a (a Misdemeanor), and thus fulfilling the elemental requirements under Mich. Comp. Law 750.110a(4), of the Home Invasion third-degree statute.

IV.      The trial court failed in its judicial oversight duties, and thus violated Petitioner's constitutional right to due process, and equal protection under the law, as stated in, both, Michigan Constitution 1963, Article I, §§ 2, 13, 17, & 20; and, Article VI, § 13; and United States Constitution, Amendments V, VI, VII, and XIV, § 1, by its failure to oversee the prosecution's procedures to:

      A.      Obtain a proper "complaint felony," against Petitioner, clearly stating the name of the victim, or complainant, and subsequently signed by the same victim, or complainant, rather than the complaining witness (the Officer, taking the Complaint, from the Complainant).

      B.      Initially charge Petitioner (in District Court, Case # 101449-FY), with a second count, in the original charge under Mich. Comp. Law 750.110a(4), which would subsequently include the indecent exposure statute, Mich. Comp. Law 750.335a (a Misdemeanor), and thus fulfilling the

elemental requirements of the Home Invasion third degree statute.

C. Failing to allow the objection by trial counsel [and] request for a continuance, or a postponement of the trial, for reasons of illness.

D. Improperly scor[ing] Petitioner's OV, and PRV, and thus causing wrongful sentencing by the trial court.

E. Wrongfully enhanc[ing] Petitioner's sentence.

F. Redact[ing] an[] uncertified copy of a C.D., or audiotape, of Petitioner's jail phone conversation with his mother, which was played for the jury during the course of trial.

V. The prosecution unconscionably violated Petitioner's constitutional right to due process, and equal protection under the law, as stated in, both, Michigan Constitution 1963, Article I, §§ 2, 13, 17, & 20; and, Article VI, § 13; and United States Constitution, Amendments V, VI, VII, and XIV, § 1, by:

A. Failing to obtain a proper "complaint felony," stating the name of the victim, or complainant, and subsequently signed by the same named victim, or complainant, not a/the complaining witness (the Officer, taking the Complaint, from the Complainant).

B. Failing to initially charge the petitioner (in District Court, Case # 101449-FY), with a second count, in the original information, which would thus include the indecent exposure statute, Mich. Comp. Law 750.335a (a Misdemeanor), and hence fulfilling the elemental requirements of the Home Invasion third degree statute.

C. Failing to obtain a proper arrest warrant, until the day after the actual arrest, and, according to the documentation provided, it is not clear, for certain, as to what date the actual arrest was made.

D. Failing to date, and sign, the initial information felony form.

E. Going contrary to the charges set forth in the information did [*sic*] the prosecution have jury instruction CJ2d 20.33

indecent exposure, read to the jury, before they went into deliberations.

F.     The prosecution not having the authority, during trial, to request the jury instruction CJ2d 20.33 indecent exposure, be read to the jury in the first place, due to there having been a properly executed, second included charge, of indecent exposure, under Mich. Comp. Law 750.335a (a Misdemeanor).

G.     Failing to admit jury instruction CJ2d 20.33 for the indecent exposure charge, during the discovery process, and during the course of the scheduling conference, was the prosecution allowed under M.C.R. 6.201(A & B), to add the second charge for the indecent exposure charge (at the Circuit Court Level), as the first, or second, amended information felony: to wit, must all requests for discovery pursuant to M.C.R. 6.201(A & B), be filed with the court, and served upon all of the parties, no later than 14 days from the date of the schedule order.

H.     Admitting an uncertified, redacted, copy of a C.D., or audiotape, of Petitioner's jail phone conversation with his mother, which was played for and to the jury.

VI.     Trial counsel gave ineffective assistance in the prescribed performance of the duties to petitioner, and in violation of U.S. Const. Am's. V, VI, and XIV, and Mich. Const. 1963, Art. I, § 2, 17, and 20, by virtue of failing to object in the many, and numerous, instances when there clearly should have been an objection made, which cannot be determined to have been good trial strategy.

VII.     The cumulative effect of all of the aforementioned errors contributed to, and caused, an unjust and wrongful conviction of Petitioner.

Pet. at 18-21.  In opposing the petition, the respondent argues that the claims lack merit, and some are procedurally defaulted, meaning that the petitioner did not raise them properly in the state courts so as to preserve them for review on the merits by a federal court.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve all his claims in the trial court by timely objection, and the state court's denial of those

claims on that basis is an adequate and independent ground for the denial of relief under state law, which is not reviewable here. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It "is not a jurisdictional bar to review of the merits," *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural default will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Bridinger filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal

quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 841 (6th Cir. 2017); *Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A.

The petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his third-degree home invasion conviction, focusing on the supposed lack of evidence of the predicate crime of indecent exposure.

Michigan law declares that a person is guilty of third-degree home invasion if he or she "breaks and enters a dwelling with intent to commit a misdemeanor in the dwelling, enters a dwelling without permission with intent to commit a misdemeanor in the dwelling, or breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a misdemeanor." Mich. Comp. Laws § 750.110a(4)(a).

Indecent exposure is a misdemeanor under state law. A person is guilty of that offense if he or she "knowingly makes any open or indecent exposure of his or her person or of the person of another." Mich. Comp. Laws § 750.335a(1). The statute prohibits "two different types of conduct": open exposure, and indecent exposure. *People v. Neal*, 266 Mich. App. 654, 656, 702 N.W.2d 696, 698 (2005). An exposure need not be made in a public place in order to be an open or indecent exposure. *Id.* at 663-64, 702 N.W.2d at 701-02. An open exposure can be the display of the human anatomy "under circumstances which created a substantial risk that someone might be offended." *Ibid.* (quoting *People v. Huffman*, 266 Mich. App. 354, 360, 702 N.W.2d 621 (2005)). A person need not observe the exposure in order for the exposure to be open. *People v. Vronko*, 228 Mich. App. 649, 657, 579 N.W.2d 138, 142 (1998). The exposure must create a "substantial risk" that someone might see it and be offended. *Neal*, 266 Mich. App. at 663, 702 N.W.2d at 702 (quotation marks omitted). An indecent exposure need not be observed, but unlike an open exposure, an

indecent exposure must occur in a public place if it is not observed by another. *Id*. at 662, 702 N.W.2d at 701; *People v. Williams*, 256 Mich. App. 576, 582, 664 N.W.2d 811, 814 (2003).

The Michigan Court of Appeals held that the trial evidence satisfied the elements of the crime. The court explained:

> Viewed in a light most favorable to the prosecution, the evidence was sufficient for a rational jury to find that defendant committed the underlying misdemeanor of indecent exposure. Defendant broke into his stepsister's home late at night, without her permission, and, while naked, attempted to enter her bed. Given that the stepsister was in bed at the time defendant attempted to enter the bed, a rational jury could find that defendant committed an open exposure because his entry into the bed created a substantial risk that the stepsister would see him, and be offended.
>
> Defendant disagrees that his exposure was open, as he contends that he did not attempt to call attention to his naked body because he attempted to slip into bed quietly and unnoticed. However, the offense only requires that the defendant create a substantial risk of being seen, and defendant cannot credibly argue that his stepsister would not be expected to see him when he attempted to enter the same bed she was occupying. This is particularly so because the stepsister testified that defendant did not appear to intend to sleep when he entered the bed. Moreover, the evidence was sufficient for a rational jury to find that defendant committed an indecent and open exposure because the stepsister was offended by the exposure, and because a reasonable person would have been offended by her stepbrother's uninvited, nude, late-night entry into her bed.

*Bridinger*, 2013 WL 5663224 at *1-2 (citations omitted).

The Michigan Court of Appeals reasonably applied federal constitutional law here. Certainly, the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). But the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (citation and footnote omitted). That rubric "must be applied with explicit reference

to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review — as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

It is well established, therefore, that a victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Marilyn Fedewa's testimony provided sufficient evidence of the petitioner's guilt at trial. She testified that the petitioner broke into her home uninvited during the middle of the night and attempted to get into bed with her while he was naked. He then remained naked as she fled the house, returned, and yelled at him to leave. She saw, and was upset by, the sight of his naked body during the initial and subsequent confrontation. There also was physical evidence indicating that the petitioner entered through the window. And his wallet was found at the house. That evidence was sufficient to establish that the petitioner committed the misdemeanor of indecent exposure, as well as the other elements of third-degree home invasion.

The petitioner contests the credibility of the witnesses and the jury's evaluation of the evidence presented at trial. That argument plays no part in habeas review, however. That is because "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam); *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (holding that a habeas court must defer

to the factfinder at trial for its assessment of the credibility of witnesses). A federal court may not re-weigh the evidence or re-determine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). The jury's verdict was reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that the petitioner committed a third-degree home invasion with the underlying misdemeanor of indecent exposure.

## B.

The petitioner next asserts that he is entitled to habeas relief because the trial court erred when instructing the jury on the elements of indecent exposure. He also argues that the jury should not have been instructed on indecent exposure because he was not charged with that offense, and the trial court should not have accepted the prosecutor's requested instruction on indecent exposure because it was untimely.

The Michigan Court of Appeals recited the relevant facts bearing on this issue:

[T]he trial court instructed the jury as follows with regard to indecent exposure:

To prove this charge [indecent exposure], the Prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that the defendant exposed his genitals, pubic area, or buttocks.

Second, that the defendant knew that he was exposing his genitals, pubic area, or buttocks.

Defendant argues that the trial court should have instructed the jury in accordance with CJI2d 20.33, which includes additional language with regard to the open or indecent nature of the exposure:

[Third/Fourth], that the defendant did this in a place under circumstances in which another person might reasonably have been expected to observe it and which created a substantial risk that someone might be offended or in a place where such exposure is likely to be an offense against your community's generally accepted standards of decency and morality. In determining this, you must think about the nature of the act and all of the circumstances surrounding the act.

*Bridinger*, 2013 WL 5663224 at *2-3.

There was no objection to the instruction at trial, and the court of appeals reviewed this claim for plain error. It assumed that the trial court erred by omitting the quoted language, but nonetheless denied relief because there was overwhelming evidence that the petitioner committed an indecent exposure when he attempted to enter his stepsister's bed while he was naked. The court concluded that the petitioner could not demonstrate that he was prejudiced by any jury instructional error, and therefore the error was harmless. *Id.* at *3.

The court of appeals also determined that giving an instruction on indecent exposure was proper because it was an element of the charged offense of third-degree home invasion and an underlying offense to the home invasion offense. The court also ruled that the prosecutor filed its requested jury instructions, including the indecent exposure instruction, in a timely manner before the anticipated trial dates. *Id.*, at *8-9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The challenged jury instruction "'may not be judged in artificial isolation,'

but must be considered in the context of the instructions as a whole and the trial record." *Ibid.* (quoting *Cupp*, 414 U.S. at 147). The Court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Ibid.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

The petitioner criticizes the jury instruction in this case not because of what the court said, but because of what it omitted. However, the Sixth Circuit has held that "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Patterson v. Haskins*, 316 F.3d 596, 609 (6th Cir. 2003) (quoting *Neder v. United States*, 527 U.S. 1, 9 (1999) (emphasis in original)). The Supreme Court has observed that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The omitted element described the circumstances under which an exposure of one's anatomy might be considered "indecent" — that is, when it is likely observable or offensive to others. The state appellate court found that omission harmless in light of the facts of this case. That conclusion reasonably applied federal constitutional law. A constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). Jury instructional errors, like other trial errors, are subject to harmless error analysis. *See Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008) (instructing jury on multiple theories of guilt, one of which is improper, is subject to harmless error analysis); *Neder v.*

-15-

*United States*, 527 U.S. 1, 9-11 (1999) (jury instruction that omits element of offense is subject to harmless error review). In this case, the evidence of the petitioner's guilt of indecent exposure was overwhelming.

Moreover, the indecent exposure instruction was proper under Michigan law because it was an element — the predicate offense — for the third-degree home invasion charge, and the prosecutor's request was timely and in accordance with the trial court's order. The petitioner has not shown that an error occurred, let alone one which rendered his trial fundamentally unfair. Habeas relief is not warranted on these claims.

The petitioner relatedly asserts that his trial attorney was ineffective by failing to object to the indecent exposure jury instructions. But, as will be explicated later, a habeas petitioner seeking to assert an ineffective-assistance-of-counsel claim must establish both that his attorney's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. Citing the *Strickland* standard, the court concluded that the petitioner could not show that he was prejudiced by counsel's conduct because there was no corresponding prejudice flowing from the trial court's instructional error. *Bridinger*, 2013 WL 5663224 at *3. That holding is constitutionally sound: if there was no prejudice resulting from an instructional error, there certainly would be no prejudice from counsel's failure to object to the instruction, even if it was a mistake to omit the language defining one of the elements of the predicate crime.

Habeas relief is not warranted on this claim.

## C.

The petitioner next asserts that he is entitled to habeas relief because he was not formally charged with indecent exposure, which is the predicate misdemeanor for the third-degree home invasion offense. The Michigan Court of Appeals denied relief on this claim explaining: "Where a defendant is charged with an offense that includes as an element another underlying offense, the defendant need not be charged and convicted of the underlying offense." *Bridinger*, 2013 WL 5663224 at *4 (citation omitted).

That decision was correct as a matter of federal law. Prosecutors have significant discretion in determining what charges to file against an accused person. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *United States v. Davis*, 15 F.3d 526, 529 (6th Cir. 1994). The Sixth Amendment guarantees a criminal defendant the right to be informed of the nature of the accusations against him. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *In Re Oliver*, 333 U.S. 257, 273 (1948); *Lucas v. O'Dea*, 179 F. 3d 412, 417 (6th Cir. 1999). Of course, "whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul*, 843 F. 2d 918, 930 (6th Cir. 1988). But a defect in a state court information or indictment does not offend the Constitution unless the petitioner can establish that: (1) he did not receive adequate notice of the charges; and (2) he was therefore denied the opportunity to defend against the charges. *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).

The petitioner has made no such showing here. The state court record plainly shows that the petitioner was notified of the third-degree home invasion charge with the underlying predicate misdemeanor of indecent exposure well in advance of trial, and that he was able to defend against

the charge. Neither state nor federal law requires more. The petitioner fails to establish a constitutional violation. Habeas relief is not warranted on this claim.

### D.

The petitioner also asserts that he is entitled to habeas relief due to deficiencies with the felony complaint and the information. He says that the complaint was signed by the investigating police officer instead of the victim in violation of state law and that it was based on hearsay evidence. He also asserts that the information was not signed and dated properly by the prosecutor and was untimely.

The Michigan Court of Appeals rejected these claims, because Michigan law does not require that a complaint be signed by the victim as long as it is signed and sworn to before a judicial officer or court clerk and because Michigan law allows a probable cause determination to be based upon hearsay and factual allegations in the complaint. *Bridinger*, 2013 WL 5663224 at *5 (citing Mich. Comp. Laws §§ 764.1a(1), 764.1d; Mich. Ct. R. 6.101(A), 6.101(B), 6.102(B); *People v. Higuera*, 244 Mich. App. 429, 443, 625 N.W.2d 444 (2001)). The court also ruled that the prosecutor complied with state law by filing the original information before the petitioner's arraignment and that even if the state court rule was violated, the petitioner was not prejudiced because he had notice of the charges through the complaint and the subsequent amendments to the information. *Id*. at *5 (citing Michigan Court Rule 6.112(C) and *People v. Cain*, 299 Mich. App. 27, 53-54, 829 N.W.2d 37 (2012)).

The petitioner has not suggested how these arguments impact his federal constitutional rights. They are based entirely on the State's charging procedures as prescribed by its statutes and court rules. He cannot obtain relief from this Court on that claim because "[a] federal court may not

issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties *of the United States*." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (emphasis added). Such state law issues are not subject to federal habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); *Estelle*, 502 U.S. at 68 ("federal habeas corpus relief does not lie for errors of state law"). Habeas relief is not warranted on this claim.

## E.

The petitioner next asserts that he is entitled to a writ of habeas corpus because the trial court denied trial counsel's request for an adjournment due to illness, namely vertigo. A trial court has broad discretion in determining whether to grant or deny a motion for a continuance or adjournment in a criminal case. *Unger v. Sarafite*, 373 U.S. 575, 589 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (recognizing that trial courts have "broad discretion" in matters related to continuances). When a habeas petitioner challenges the grant or denial of such a request, not only must there have been an abuse of discretion, but also the trial court's decision "must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Bennett v. Scroggy*, 793 F.2d 772, 774-75 (6th Cir. 1986). A trial court's denial of a continuance or adjournment request rises to the level of a federal due process violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Morris*, 461 U.S. at 11-12 (quoting *Ungar*, 376 U.S. at 589); *see also Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004).

The Michigan Court of Appeals rejected this claim on direct appeal. The court explained:

> The record reveals that defendant's trial counsel requested an adjournment before trial, citing an illness. The trial court, citing counsel's late request for the adjournment, agreed to grant the adjournment, but only if trial counsel obtained a note from a doctor verifying the illness or if trial counsel agreed to pay a fee. Faced with these conditions, trial counsel opted to proceed with trial. By proceeding with trial and withdrawing his request for an adjournment, trial counsel waived his request. Moreover, the trial court did not actually deny trial counsel's request for an adjournment. Rather, the trial court conditioned the grant of an adjournment on trial counsel's procurement of a doctor's note or on being assessed a fee. Pursuant to MCR 2.503(D)(2), the trial court may impose costs or other conditions upon the grant of an adjournment. Furthermore, defendant fails to identify any manner in which trial counsel was unprepared for trial, and our review of the record reveals that trial counsel was prepared for trial, as he raised objections, cross-examined witnesses, and raised arguments on behalf of defendant.

*Bridinger*, 2013 WL 5663224 at *5 (citation omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. In response to the requested adjournment, the trial judge gave counsel reasonable options. Rather than persisting in his request, trial counsel chose to instead proceed with trial. The trial judge's response was neither unreasonable nor arbitrary.

To obtain habeas relief, a petitioner must show that the denial of the request for a continuance or adjournment resulted in actual prejudice to the defense. *Burton*, 391 F.3d at 772; *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). Actual prejudice may be demonstrated by showing that additional time would have made relevant evidence available or would have otherwise benefitted the defense. *Powell*, 332 F.3d at 396. The petitioner has not made that showing. He says only that he was prejudiced by the ruling, but he does not say how. Conclusory allegations, without evidentiary support, are insufficient to justify habeas relief. *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify

federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). The record shows that trial counsel was able to challenge the prosecution's case, question witnesses, and present arguments for the defense. The fact that trial counsel was ultimately unsuccessful does not mean that he was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Habeas relief is not warranted on this claim.

## F.

The petitioner next asserts that he is entitled to federal habeas relief because the trial court erred when scoring the state sentencing guidelines. The Michigan Court of Appeals denied relief on this claim, finding that the trial court properly scored offense variables (OV) 4, 10, and 13 and prior record variable (PRV) 5, and although the trial court erred in scoring PRVs 2 and 4, that error did not affect the sentencing range. *Bridinger*, 2013 WL 5663224 at *6-8.

Claims that arise out of a state trial court's sentencing decision are not cognizable upon federal habeas review unless the petitioner can show that the sentence exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001); *see Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *see also Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue, which is not cognizable on federal habeas review).

The petitioner's sentence is within the statutory maximum for a fourth habitual offender, *see* Mich. Comp. Laws §§ 750.110a(4); 769.12, and within the minimum sentence guideline range of 12 months to 48 months imprisonment for a habitual offender. *See* Mich. Comp. Laws §§ 777.66;

777.21(3)(c).  A sentence imposed within the statutory limits is generally not subject to federal habeas review.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

### G.

The petitioner also asserts that his sentence violates federal due process.  A sentence may violate federal due process if it is carelessly or deliberately based on a materially false foundation, which the defendant had no opportunity to correct.  *Townsend*, 334 U.S. at 741; *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information).  To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information.  *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992).  The petitioner makes no such showing.  The record reveals that he had a sentencing hearing before the state trial court with an opportunity to challenge the scoring of the guidelines and that he, in fact, challenged several OVs and PRVs.  The petitioner also presented his sentencing issues to the state appellate courts.  The petitioner has not shown that the trial court relied upon materially false or inaccurate information in imposing his sentence which he had no opportunity to correct.  No due process violation occurred.  Habeas relief is not warranted on this claim.

### H.

The petitioner relatedly asserts, in conclusory fashion, that he is entitled to habeas relief because the trial court improperly enhanced his sentence in sentencing him as a fourth habitual offender.  The petitioner seems to allege that he was not charged properly as a fourth habitual

offender.  The Michigan Court of Appeals did not specifically address this issue, although it did discuss it indirectly in rejecting the petitioner's claim that there were errors in amending the information.  *See Bridinger*, 2013 WL 5663224 at \*4.

The old version of Michigan's habitual offender statute required that habitual offender status be charged as a discrete crime and proven to a jury.  *See People v. Morales*, 240 Mich. App. 571, 576-83, 618 N.W.2d 10, 13-16 (2000) (discussing history of Michigan habitual offender law).  In 1994, however, the Michigan legislature amended the habitual offender statute to make habitual offender status a sentence enhancement rather than a separate crime.  *Id*. at 583.  Under the amended statute, the prosecutor was not required to file an information charging petitioner with being a fourth habitual offender.

Federal law does not require advance notice that a trial on a substantive criminal charge will be followed by a habitual offender enhancement.  Due process only requires that a defendant be given reasonable notice and an opportunity to be heard.  *See Oyler v. Boles*, 368 U.S. 448, 452 (1962).  In this case, the record reveals that the petitioner received sufficient notice of the fourth habitual offender enhancement.  As the Michigan Court of Appeals noted, the petitioner received notice of the fourth habitual offender sentencing enhancement on September 21, 2010, when the prosecution amended the information to include the enhancement.  This was well before his trial in January 2011 and his sentencing later that year in March.  The petitioner had sufficient notice and opportunity to address the issue during his criminal proceedings.  Due process requires nothing more.  Habeas relief is not warranted on this claim.

I.

Next, the petitioner asserts that he is entitled to habeas relief because an uncertified compact disk (CD) and transcription of his jail telephone conversations with his mother were admitted in evidence at trial. He has raised this claim based entirely on state evidence law. Errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim, finding that the petitioner waived the issue by withdrawing an objection to the CD on other grounds and agreeing that it was admissible, that the claim lacked merit, and that the petitioner stipulated to the accuracy of the transcript of the CD. *Bridinger*, 2013 WL 5663224 at *8.

That decision did not contravene — and reasonably applied — Supreme Court precedent. The record shows that trial counsel agreed that the CD was admissible and the transcript of the CD was accurate. The CD was relevant and admissible under state law to show the petitioner's intent, to evaluate the credibility of witnesses, and to challenge his defense. The prosecutor acted properly when he offered the CDs in evidence; especially where, as here, the trial court admits the evidence. *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). The petitioner has not demonstrated that the

admission of the CD and its transcript was improper or rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

J.

The petitioner next asserts that he is entitled to habeas relief because the prosecutor failed to obtain a proper arrest warrant until after the petitioner was arrested. The Michigan Court of Appeals denied relief on this claim, finding that the petitioner abandoned the argument by failing to develop it and because "there are no errors with regard to the arrest warrant." *Bridinger*, 2013 WL 5663224 at *8, n.4.

That decision faithfully tracks federal constitutional law. The petitioner has not clearly indicated whether he is contesting the state court's jurisdiction or the validity of his arrest with respect to this claim. Either way, though, his claim fails.

It is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). In *Frisbie*, the Court applied this rule to reject a claim that the defendant's conviction was void because he was forcibly abducted from one state to another to secure his presence for trial. The Court explained that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' . . . [D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." *Frisbie*, 342 U.S. at 522. Under *Ker* and *Frisbie*, "the manner by

which a defendant is brought to trial does not affect the [state]'s ability to try him." *United States v. Matta-Ballesteros,* 71 F.3d 754, 762 (9th Cir. 1995).

This claim does not support habeas relief.

## K.

The petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective by failing to object to several of the aforementioned alleged improprieties at trial. The Michigan Court of Appeals denied relief on this claim, finding that counsel was not ineffective by not raising meritless arguments, and although counsel erred by failing to object to the erroneous scoring of PRVs 2 and 4, the petitioner was not prejudiced by the scoring errors. *Bridinger*, 2013 WL 5663224 at *9.

The *Strickland* standard applies to this claim, requiring proof of both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. ---, ---, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). The standard is "all the more difficult" on habeas corpus review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Ibid*.

The state court's decision measures up to these constitutional rules. Because the foregoing claims lack merit, the petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct. And he has not shown any prejudice flowing from the trial court's sentencing guideline scoring miscue. It is well-settled that defense counsel cannot be deemed ineffective for failing to make futile objections or meritless arguments. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Habeas relief is not warranted on this claim.

L.

The petitioner also asserts that he is entitled to habeas relief based upon perceived violations of his equal protection rights with respect to several of the foregoing issues. The Court disagrees.

To state an equal protection claim, a habeas petitioner must show that he was intentionally treated differently from other similarly-situated people, and there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *City of Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 439 (1985). In this case, the petitioner alleges no fact that shows that he was treated differently than a person similarly situated to him. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771. The petitioner fails to state an equal protection claim in his pleadings. Habeas relief is not warranted on such a basis.

M.

The petitioner further asserts that he is entitled to habeas relief based upon perceived violations of Michigan law as they relate to several of the foregoing issues. However, as discussed earlier, those claims are not cognizable upon habeas review. A federal court may grant a writ of habeas corpus only on the ground that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas relief does not lie for perceived state law errors, *Estelle*, 502 U.S. at 67-68, as state courts are the final arbiters of state law. *Lewis*, 497 U.S. at 780; *Cristini*, 526 F.3d at 897; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. The petitioner thus fails to state a claim upon which habeas relief may be granted as to any state law issues. Habeas relief is not warranted on such claims.

N.

Lastly, the petitioner asserts that he is entitled to habeas relief based upon cumulative error. The Michigan Court of Appeals denied relief on this claim finding that there were no trial errors so as to warrant relief based upon a theory of cumulative effect. *Bridinger*, 2013 WL 5663224 at *9. This Court must reject the petitioner's claim because the Supreme Court has never held that cumulative errors may form the basis for issuance of a writ of habeas corpus. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). The petitioner's cumulative-error claim, therefore, is not cognizable on habeas corpus review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 14, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 14, 2018.

s/Susan Pinkowski
SUSAN PINKOWSKI